UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| JERIMIAH RAUL YANEZ, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-00541 JD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Since age three, Plaintiff Jerimiah Yanez, has suffered from epilepsy involving grand mal seizures that required his hospitalization. The condition has required regular treatment from his family doctor and neurologist. Yanez also suffers from depression. In August 2013, he applied for disability insurance benefits alleging disability as of the date of his application. After holding a hearing, the administrative law judge ("ALJ") disagreed and found that jobs existed which Yanez was capable of performing. The Appeals Council denied the request for review. Yanez then filed this action seeking judicial review of that decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I. FACTUAL BACKGROUND

*Medical & Educational Records*

The record consists of Yanez's medical records since late 2011, along with his educational records from high school. Those records reveal that Yanez was born in 1981 and that complications during his birth may be linked to his suffering from regular seizures—several smaller seizures a week and up to four grand mal seizures per year. The seizures are typically set

into motion by everyday stress, and the residual effects, including fatigue, disorientation, memory loss, and upper extremity numbness/tingling, can last up to a couple of weeks. Yanez's neurologist, Dr. Richard H. Strawsburg, has documented (in relevant part) Yanez's suffering from bilateral upper extremity numbness and tingling since 2012 (Tr. at 594-640, 690-99, 833-56). Dr. Strawsburg has repeatedly recommended brain surgery, but Yanez testified that the treatment was not guaranteed to be effective.

Dr. Kubley, Yanez's family doctor, offered medical source opinions on February 6, 2014 and August 2, 2014 (Tr. 718-22, 735-39). On the February 2014 physical assessment form, Dr. Kubley indicated that Yanez's symptoms would "frequently" interfere with the type of attention and concentration necessary to perform simple work-related tasks. He estimated that Yanez could sit, stand, and walk only 20 minutes at a time and only 1 hour out of 8. He indicated that Yanez would need an at-will sit/stand option and would need to take 3-4 unscheduled 15-minute breaks per day. He opined that Yanez could occasionally lift/carry up to 10 pounds. He estimated that Yanez could use his hands, fingers, and arms only 10% of the day, and that he would likely be absent from work 3-4 times a month. On the mental capacity assessment form he completed, Dr. Kubley assessed Yanez with moderate limitations in: understanding and memory; sustained concentration and persistence; and, adaptation. He assessed Yanez with marked limitations in social interaction.

In his August 2014 opinion, Dr. Kubley indicated that Yanez suffered from drowsiness and fatigue from medications, and that symptoms would "constantly" interfere with the type of attention and concentration necessary to perform simple work-related tasks (Tr. 735-39). Dr. Kubley again assessed extreme limitations in Yanez's ability to sit, stand, and walk, but this time estimated that Yanez could sit for 60 minutes at a time and could stand/walk for 15 minutes at a

time. He then determined that Yanez could sit for 6 hours out of 8, and could stand/walk for 1 hour out of 8. Dr. Kubley again checked the box indicating that Yanez needed a sit/stand option. He indicated that Yanez would need to take 3-4 unscheduled 10-minute breaks per day. He estimated that Yanez could occasionally lift/carry 20 pounds, and could use his hands, fingers, and arms 50% of the workday on the right and 10% on the left. He estimated that Yanez would be absent from work 3-4 times a month. On the mental capacity assessment form, Dr. Kubley opined that Yanez had marked to extreme limitations in understanding and memory, mostly extreme limitations in sustained concentration and persistence, moderate to marked limitations in social interaction, and extreme limitations in adaptation.

Dr. Kubley documented that Yanez suffers not only from seizures and depression, but from mild mental retardation. In fact, Yanez's high school records indicate that his intelligence quotient fell within the mildly mentally handicapped range, and that Yanez received full-time special education courses because it was believed that he had a learning disability (Tr. 555-78).

*State Agent Opinions*

On October 8, 2012, Yanez underwent a psychological consultative examination with Dr. Utz (Tr. 589-92). Yanez reported that he had attempted college coursework, but could not focus. He was typically let go from jobs once they became aware of his seizures. On examination, Yanez appeared depressed and was very frustrated by his medical conditions. Dr. Utz diagnosed Yanez with depressive disorder, secondary to seizure disorder.

Alan Wax, Ph.D., conducted a psychological consultative examination on March 11, 2014 (Tr. 730-33). Yanez reported having no friends, not wanting to talk with others, and disliking big crowds. Dr. Wax assessed Yanez with average to low-average cognitive functioning

3

and diagnosed Yanez with severe major depressive disorder, recurrent. He assigned Yanez a Global Assessment of Functioning score of 53, which describes moderate symptoms.

A state agency medical consultant opined on March 21, 2014, that Yanez could occasionally lift and carry 50 pounds and could frequently lift and carry 25 pounds (Tr. 384-86). Yanez could occasionally climb ramps and stairs, could never climb ladders, ropes, or scaffolds, could frequently balance, had no limitations in the remaining postural areas, and needed to avoid even moderate exposure to environmental hazards as a seizure precaution.

Also in late March 2014, a state agency psychological consultant found Yanez to be moderately limited in a few areas, including social functioning and concentration, persistence, and pace (Tr. 383-88). The state agent concluded that Yanez could perform simple, repetitive tasks, but would probably need a position where he worked alone.

*ALJ Determination*

After reviewing the record, the ALJ concluded that Yanez had the residual functional capacity ("RFC")[1] to perform medium exertional work limited in relevant part to simple, repetitive, and routine tasks involving only occasional use of the non-dominant left arm, frequent interaction with the public and coworkers, and occasional interaction with supervisors. In making this determination, the ALJ never mentioned Yanez's documented low to average cognitive functioning (or mild mental retardation), gave Dr. Kubley's opinions "little evidentiary weight," and assigned the 2014 reviewing state agent opinions "some evidentiary weight." In determining the type of work Yanez could perform, the ALJ rested on the vocational expert's ("VE")

---

[1] Residual Functional Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

testimony that based on the (relevant) hypothetical posed to him, Yanez (who had no relevant past work), could perform unskilled work as an usher, arcade attendant, and information clerk. Accordingly, the ALJ found at step five that Yanez was not disabled.

## II. STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. The ALJ

5

must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform past relevant work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. *See* 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met, in between steps three and four, the ALJ must then assess the claimant's RFC, which, in turn, is used to determine whether the claimant can perform his past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that

there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

This appeal primarily concerns the inadequate discussion of the medical evidence and assessment of Yanez's RFC. While Yanez also contends that the ALJ did not sufficiently explain the reasons for discounting Yanez's complained of limitations, the Court need not address this issue since remand is otherwise required. The Court would note, however, that a remand will allow the VE further opportunity to provide a sufficiently reliable foundation for his testimony concerning the availability of jobs that fit Yanez's RFC.

*ALJ's Discussion of the Medical Evidence & RFC Determination*

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). More specifically, the ALJ is obligated to consider and evaluate the medical opinions in the record[2] and consider the objective medical evidence. 20 C.F.R. §§ 404.1527(b), (c), 404.1513(a). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Nevertheless, an ALJ need not provide a written evaluation of every piece of testimony and evidence. *Golembiewski*, 322 F.3d at 917. Instead, an ALJ need only minimally articulate his

---

[2] This is true whether the medical opinion comes from a treating physician who regularly provides care to the claimant, an examining physician who conducts a one-time physical exam of the claimant, or a reviewing or non-examining physician who has never examined the claimant. *See* 20 C.F.R. §§ 404.1527(b), (c), 404.1513(a).

7

justification for accepting or rejecting specific evidence of disability. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

In this case, the Court agrees with Yanez that in assessing the RFC, the ALJ failed to adequately explain the basis for not imposing a limitation with respect to both arms and for assigning reduced weight to certain medical opinions. The ALJ also failed to address relevant medical evidence that supported Yanez's claim of disability.

With respect to Yanez's upper extremity problems, the ALJ repeatedly acknowledged the treating source's various medical records which documented that Yanez suffered from bilateral arm tingling, numbness, and decreased sensation since 2012 (Tr. 99-100) (citing exhibits 5F, 7F, 19F). Despite seemingly crediting this evidence, the ALJ only imposed an occasional use limitation with respect to Yanez's left arm, while saying nothing about the need for a right arm use limitation (or explaining why such a limitation was not necessary). The importance of this shortcoming is demonstrated by the VE's hearing testimony indicating that if a person could not use *both* arms frequently, then all production jobs and all jobs requiring a medium exertional level would be eliminated, while some light exertional jobs would still exist (a point which the Court addresses below). In other words, use limitations with respect to the upper extremities affect the type of work that a person can perform, especially if use restrictions exist with respect to *both* upper extremities. Because the ALJ referenced the medical records documenting Yanez's decreased sensation in *both* arms, without providing any reason for disbelieving this objective evidence, it was imperative for the ALJ to at least minimally articulate his justification for not including a bilateral arm limitation in the RFC. *See Berger*, 516 F.3d at 545; *Rice*, 384 F.3d at 371.

With respect to medical opinions, the ALJ assigned little weight to the opinions of Dr. Kubley (Tr. 100-01). Dr. Kubley essentially opined that Yanez was so restricted that he was not able to work. In discounting Dr. Kubley's opinions as to Yanez's physical abilities, the ALJ stated that Yanez had "not required frequent emergency room treatment as a result of his seizures," he had "often denied any seizure activity," he had "demonstrated full strength in his upper" extremities, and Dr. Kubley's February 2014 and August 2014 opinions were contradictory (Tr. 101). However, the ALJ's rationale provides an insufficient basis for discounting this treating doctor's opinions.

As to Yanez's seizure activity, the medical records document at least seven emergency room visits from January 2012 to June 2015 relating to seizures. Moreover, Dr. Strawsburg repeatedly documented that Yanez had suffered from seizure activity before many of Yanez's follow-up visits. Yanez was regularly taking Keppra for his seizures, and on May 1, 2015, it was documented that when his dose of Keppra was lowered (because his blood tests revealed high levels), he started having "more seizures" (Tr. 745). Thus, the objective evidence refutes the ALJ's (faulty) observation that Yanez's seizure activity and treatment was infrequent.[3] Moreover, in discounting Dr. Kubley's opinions, the ALJ was too quick to "cherry-pick" records demonstrating that Yanez presented with full upper extremity strength on some occasions, given that other records demonstrated a decreased sensation in both arms (as previously discussed). And while the ALJ characterized Dr. Kubley's February and August 2014 assessments as being "contradictory," this is difficult to make sense of (without further explanation) since the evaluations were separated by a period of six months. Furthermore, in focusing only on the

---

[3] And to the extent that the ALJ faulted Yanez for not seeking more aggressive treatment options (Tr. 99), he was required to first consider Yanez's testimony relative to his belief that undergoing brain surgery was not guaranteed to be successful. *See Craft,* 539 F.3d at 679.

differences between the assessments, the ALJ failed to acknowledge Dr. Kubley's consistent statements that Yanez was significantly limited in his ability to use both of his upper extremities, and that Yanez would need unscheduled breaks and would miss work several times a month. Not only did the ALJ fail to acknowledge the consistency within Dr. Kubley's opinions and with the record as a whole, but the ALJ did not refer to the length of Yanez's treatment relationship with Dr. Kubley, the frequency of his examinations, or the nature and extent of the treatment relationship. *See Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(1)-(5)). Accordingly, it cannot be said that the ALJ in this case offered "good reasons" for discounting this treating physician's opinion.[4] *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

With respect to the late March 2014 state agent opinions, the ALJ only assigned them some weight (Tr. 100). In relevant part, the ALJ rejected the state agent's opinion that Yanez needed to work alone. The ALJ did so because the state agent didn't personally examine Yanez or have the benefit of reviewing subsequent medical records, and because Yanez routinely appeared calm, friendly, and cooperative (Tr. 100). Yet, these reasons are insufficient.

First, if an ALJ could discount reviewing state agent opinions solely because they did not personally examine the claimant, then the use of reviewing state agents in the social security context would be rendered a nullity. Second, the ALJ never bothered to identify which

---

[4] The Court recognizes that the treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 81 FR 62560 at 62573-62574 (Sept. 9, 2016) ("we would no longer give a specific weight to medical opinions . . . this includes giving controlling weight to medical opinions from treating sources . . . [and] [w]e would not defer or give any specific evidentiary weight, including controlling weight, to any . . . medical opinion, including from an individual's own healthcare providers."). As Yanez's application was filed before March 27, 2017, the treating physician rule applies. *See id.* § 404.1527.

subsequent records contradicted the state agent's opinion that Yanez needed to work alone, so that this Court could conduct an adequate review. Third, the ALJ impermissibly plucked references from the record regarding Yanez's calm and friendly demeanor, while ignoring other references (even in the same records) that Yanez reported anger problems, did not like talking to others, and isolated himself. Thus, it was impermissible for the ALJ to "cherry-pick" these passing references to Yanez's demeanor for purposes of discrediting the state agent's opinion, without also acknowledging the countervailing evidence concerning Yanez's social limitations. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Finally, the Court notes that the ALJ never once discussed Yanez's documented low to average cognition and history of mild mental retardation. The records supporting this mental impairment were generated as early as Yanez's high school days and again appeared in Drs. Wax and Kubley's files. It was error for the ALJ to ignore this entire line of evidence supporting Yanez's claimed disability. *Zurawski*, 245 F.3d at 887. Moreover, the ALJ was not at liberty to assign Yanez an RFC that was limited to simple, repetitive, and routine tasks, without explaining how Yanez's limited mental capacities (including his documented difficulties with maintaining concentration, persistence, and pace—as credited by the ALJ) were factored in to the ability to continuously perform work. *See Varga v. Colvin*, 794 F.3d 809, 814–15 (7th Cir. 2015); *see also Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (failure of ALJ to include in hypothetical moderate difficulties in concentration, persistence, and pace attributed to applicant was reversible error).

Ultimately, these various shortcomings call into question the soundness of the ALJ's RFC finding, because in assessing the RFC the ALJ must provide a sound explanation for rejecting medical opinions and objective medical evidence supporting Yanez's claimed

limitations. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see* 20 C.F.R. § 404.1527. Accordingly, remand is required.

*Steps Four & Five*

The insufficiently supported RFC finding led the ALJ to ask hypotheticals of the VE which omitted claimed (and potentially credible) limitations caused by Yanez's well-documented problems with seizures and depression. For this reason, the VE's testimony cannot be relied upon as an accurate indicator for the type of work that Yanez is capable of performing.[5] *See Young v. Barnhart*, 362 F.3d 995, 1003-05 (7th Cir. 2004) (the ALJ must determine the claimant's RFC before performing steps four and five because a flawed RFC typically skews questions posed to the VE); SSR 96-8p. Thus, until the hypotheticals presented to the VE include the functional limits that the ALJ accepts as credible, and the ALJ adequately explains the claimant's actual limitations and resulting RFC based on the relevant medical evidence, 20 C.F.R. §§ 404.1545, 404.1546(c), step five cannot be affirmed in this appeal. *See Young,* 362 F.3d at 1003-05.

But there's one more reason for why the VE's testimony cannot be relied upon in this case. The VE said that Yanez, even with a left arm use limitation, could perform the jobs of an

---

[5] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). While the VE indicated having reviewed Yanez's record and listened to the testimony, he did not indicate in his responses to having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, and not on the record itself or the limitations of the claimant himself. *Id.* (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

usher, arcade attendant, and information clerk. But the VE acknowledged that the Dictionary of Occupational Titles ("DOT") (itself, deemed "obsolete," *see Spicher v. Berryhill*, No. 17-3399, 2018 WL 3677566, at *4 (7th Cir. Aug. 3, 2018)), was at odds with his testimony. The VE testified that the DOT indicated that an arcade attendant must be able to frequently use his hands and fingers. However, it was the VE's belief that arcade attendants "basically watch[] individuals," and so the job would only require occasional use of the hands (Tr. 364). Similarly, the VE testified that the DOT indicates that an information clerk must be able to frequently reach and handle, as well as occasionally use one's fingers. But in the VE's mind, the upper extremity requirements of an information clerk were actually limited to occasional use, since the job mainly required providing basic information to the public (Tr. 365).

However, the VE never explained the basis for his opinions which varied from the DOT. While the ALJ supplemented the VE's testimony by indicating that it was based on the VE's "experience with these jobs," (Tr. 102), the VE did not say as much. *See Overman v. Astrue*, 546 F.3d 456, 464–65 (7th Cir. 2008) (requiring that ALJ explain VE's deviation from DOT); *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (same). Thus, the ALJ erred in unquestioningly relying on the VE's bottom line, a bottom line admitted to be in conflict with the DOT. *See id*. Moreover, the VE never identified the nature of his past experience with respect to the particular jobs that he identified, such that the reasonableness of his estimates could be assessed. *See, e.g., Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018) ("The VE, for example, could have drawn on his past experience with . . . knowledge of national or local job markets, or practical learning from assisting people with locating jobs throughout the region, to offer an informed view on the reasonableness of his estimates."). The absence of any such testimony left the ALJ without a sufficiently reasoned and principled basis for accepting the fact

that Yanez could actually perform the jobs identified by the VE, or for accepting the job-number estimates as being reasonably accurate. *Id.*

Accordingly, on remand the VE will have an opportunity to better explain the basis for any testimony which varies from the DOT, and sufficiently support the estimates that he produced with respect to the number of jobs that Yanez could perform (as premised on an adequately supported RFC).

The remedy for the shortcomings noted herein is further consideration, not an award of benefits as requested by Yanez's counsel.

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: August 22, 2018

/s/ JON E. DEGUILIO
Judge
United States District Court